IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD REED,

        Plaintiff,                No. CIV S-05-0060 JAM GGH P

       vs.

DR. B. WILLIAMS,            <u>ORDER</u> &

        Defendants.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

<u>Introduction</u>

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: 1) plaintiff's request for sanctions regarding defendant B. Williams' discovery responses, filed on 7/24/08, and opposed by defendants, after which a reply was filed by plaintiff; 2) plaintiff's motions to compel discovery, filed on 7/31/08, and on 8/05/08, supplemented by a filing on 8/12/08, to all of which opposition was filed by defendants, after which plaintiff filed a reply; 3) plaintiff's motion for sanctions against counsel for defendants, filed on 9/05/08, to which an opposition was filed; 4) defendants Frates and Moore's motion to dismiss, filed on 11/14/08, to which plaintiff filed an opposition, after which defendants filed their reply; 5) Defendant B. Williams' motion for summary judgment, filed on 11/26/08, to which plaintiff filed his opposition, after which a reply was filed; 6) plaintiff's

1

motion for sanctions against defendants' counsel, filed on 12/09/08, opposed by defendants, after which plaintiff filed a reply.

Plaintiff's Allegations

This action, originally filed on 1/11/05, is now proceeding on a second amended complaint, filed on 1/12/07, against defendants Dr. B. Williams, C/Sgt.[1] T. Frates, C/O[2] W. Moore.[3]

Plaintiff alleges that inmates classified as EOP[4] are so classified for severe mental illness and are exclusively housed with other EOP inmates per CDCR[5] directive; that inmates classified as CCCMS[6] are inmates who are so designated due to less severe mental illness; and that neither at this time nor during the relevant period at issue herein was he classified by CDCR as mentally ill. In late June of 2001, plaintiff, while housed in administrative segregation (ad seg), was told by defendant Moore that he was to be moved into a cell with an EOP classified inmate named Thornton, P-76816. Plaintiff knew the much larger Thornton to be psychotic, and it was common knowledge to those in ad seg that Thornton had been placed there for beating an inmate with a hot clothes' iron. Second Amended Complaint (SAC), pp. 4-5.

Plaintiff protested the move, telling defendant Moore that he did not want to be placed in a cell with Thornton because he was a violent EOP classified inmate and would attack plaintiff who was not an EOP inmate. Nevertheless, defendant Moore placed plaintiff in

---

[1] Correctional Sergeant.

[2] Correctional Officer.

[3] Although the court referred this matter for review by the King Hall Civil Rights Clinic to determine whether the clinic could serve as plaintiff's counsel, the clinic determined that they were unable to accept appointment of counsel at the time. See Order, filed on 8/22/06 (docket # 42); King Hall response, filed on 9/28/06 (# 48).

[4] Enhanced Outpatient Program.

[5] California Department of Corrections and Rehabilitation.

[6] Correctional Clinical Case Management Services.

handcuffs, escorting or dragging plaintiff to Thornton's cell and pushing plaintiff inside, then removing plaintiff's handcuffs through a slot in the cell door. From the moment he was placed in the cell with Thornton, plaintiff began to suffer mentally from the constant fear of being injured or even fatally attacked by Thornton. SAC, p. 5.

Two days after plaintiff had been forced in the cell with Thornton, Thornton threatened to murder plaintiff by bashing out his brains with his television. Later that same day, plaintiff saw defendant Moore and told him of Thornton's threat, begging Moore to remove him immediately from the cell. Defendant Moore refused, after which plaintiff pleaded with him to get a correctional sergeant or someone with supervisory authority so that plaintiff could tell a supervisor about plaintiff's severely mentally ill status and EOP classification and the threat he had made to plaintiff. Defendant refused either to call a supervisor or to notify anyone of the danger. Instead, defendant Moore told plaintiff to reduce his risk by assaulting and battering Thornton, stating as he walked away: "I'd just whip his ass." SAC, pp. 5-6.

About an hour later, plaintiff got the attention of Library Technical Assistant Ramos (not a defendant) and told him of the situation with Thornton and the threat he posed and how Thornton had been placed in ad seg for striking an inmate in the head with a hot iron. Plaintiff asked Ramos to ask the correctional sergeant to speak with him about the danger. Moments later, defendant C/Sgt. T. Frates appeared, whereupon plaintiff explained Thornton's murderous threat, his EOP classification and the reason for Thornton's ad seg placement in detail. Plaintiff also told defendant Frates of defendant Moore's advice to plaintiff to reduce his risk of harm by attacking and battering Thornton and also that he, himself, had no mental illness diagnosis or classification, angering Thornton further, asking Frates to move him (plaintiff). SAC, pp. 6-7.

When defendant Frates asked Thornton if the problem between plaintiff and Thornton was that serious, Thorton replied: "if you don't separate us, then one of us is going to come out in a body bag." Plaintiff believes that Frates, before walking off, encouraged Thornton

to carry out his threat to plaintiff when she said: "there's nothing I can do about it; do whatever you have to do and just handle your business." Defendant Frates did nothing to separate them. SAC, pp. 7-8.

About two days later, Thornton ripped his cable from his TV, then punched plaintiff in the face while trying to pull plaintiff from his bunk and charged plaintiff. Plaintiff fought Thornton off until Thornton's attack stopped, during which time both of them suffered injuries. When Thornton stopped attacking plaintiff, plaintiff immediately went to the cell door and began to bang on the cell door yelling for the guards. SAC, p. 8.

While plaintiff was trying to be rescued, Thornton initiated a second attack, attacking plaintiff from the back. Plaintiff fought off Thornton again, both incurring further injury. Plaintiff saw non-defendant C/O Pollard and yelled for help, at which point Thornton made a third attack on plaintiff, injuring each even more. C/O Pollard and other guards responded and removed plaintiff from the cell. SAC, pp. 8-9.

Thornton's attacks resulted in lacerations and bruises to plaintiff's face and body, severe trauma to both his shoulders for which plaintiff is scheduled for long-delayed surgery, broken bones in his right hand, and a broken nasal passage which gives plaintiff constant pain and causes recurring nose bleeds. Plaintiff also contracted Hepatitis C from Thornton, presumably due to Thornton's blood infecting plaintiff through a laceration on plaintiff that Thornton caused. Moreover, plaintiff suffers severe psychological trauma as a result of Thornton's attacks and the inaction of defendants' Moore and Frates. He is in constant fear that he will be placed in a similar situation and is helpless to prevent it. His hands shake from anxiety, his sense of helplessness, and his shame at having had to strike a severely mentally ill individual to defend himself. SAC, p. 9.

Thornton's attacks on plaintiff occurred on 7/09/01. After submitting requests for medical treatment for his broken right hand bones and injuries to his shoulder, in a long-delayed response on 8/05/02, non-defendant Dr. Douglas ordered x-rays and blood tests for plaintiff, but

4

Mule Creek State Prison (MCSP) medical staff did not comply with the orders, after which plaintiff submitted additional inquires as to why the orders were ignored. In response, defendant Dr. Williams told plaintiff he had reviewed plaintiff's medical file, assuring him that plaintiff would receive the doctor-ordered x-rays and blood tests and any treatment that was necessary. SAC, pp. 9-10.

Not until about nineteen months later, on 3/18/04, in response to an administrative appeal by plaintiff, were the blood tests that had been ordered by Dr. Douglas on 8/05/02, performed at which point plaintiff's Hepatitis C was discovered. Only as of 5/21/04, were the x-rays taken that had been ordered by Douglas on 8/05/02, which revealed plaintiff's fractured distal right metacarpal and his shoulder injury which prompted further examination. Additional diagnostic examination of the shoulder revealed that a steel rod needed to be inserted, for which surgery plaintiff was still waiting at the time of filing the instant second amended complaint and from which untreated injury plaintiff suffers constant pain. Plaintiff alleges that defendant Williams' inaction and deliberate indifference has resulted in further significant injury to his hand and shoulder and the ongoing failure to treat his shoulder is likely to cause more injury and that he continues to suffer from severe pain and emotional distress due to his untreated shoulder injury. SAC, pp. 10, 12-13.

Defendants Moore and Frates subjected plaintiff to cruel and unusual punishment and were deliberately indifferent to a substantial risk of serious harm by placing him in and then failing to remove him from an unsafe situation, i.e., in failing to protect him, even promoting inmate-on-inmate violence, in violation of his rights under the Eighth Amendment, as well as his due process rights under the Fourteenth Amendment. Their actions and inactions resulted in physical injuries to plaintiff as well as severe emotional and psychological distress. SAC, pp. 10-12.

Defendant Williams was deliberately indifferent to plaintiff's serious medical needs in violation of plaintiff's rights under the Eighth Amendment. Defendant Williams'

1  inaction resulted in further significant injury to plaintiff's hand and shoulder, severe pain and

2  suffering and emotional distress.  SAC, pp. 12-13.

3          Plaintiff seeks monetary, including punitive, damages.

4  <u>Motion to Dismiss</u>

5          Defendants answered long ago.  Although defendant Moore's (and defendant

6  Williams') answer was filed on 10/06/05, and defendant Frates' answer was filed on 2/21/06, and

7  were filed in response to the original complaint, defendants were given an opportunity to amend

8  their answers in response to the second amended complaint, filed on 1/12/07, but evidently

9  elected to proceed on their earlier filed answers.  See <u>Order</u>, filed on 7/25/07.  A <u>Scheduling

10 Order</u> was filed on 5/28/08, setting the discovery cutoff date (8/29/08), and the deadline for the

11 filing of pretrial dispositive motions (12/28/08).  Nevertheless, not until 11/14/08, did defendants

12 Moore and Frates bring their motion to dismiss alleging plaintiff's failure to exhaust

13 administrative remedies before filing this action, pursuant to nonenumerated Fed. R. Civ. P.

14 12(b).[7]  Motion to Dismiss (MTD), pp. 1-8.  In their favor, while defendants Moore and Frates do

15 not note it in their motion, they did raise and preserve the affirmative defense of non-exhaustion

16 in their respective answers, filed on 10/6/05, p. 3, and on 2/21/06, p. 3.

17         Under Fed. R. Civ. P. 12(b), as to the specifically enumerated grounds 1 through

18 7, the rule announces that "[a] motion asserting any of these defenses must be made before

19 pleading if a responsive pleading is allowed."  This court finds that although this motion is one

20 that is brought under the nonenumerated grounds of Rule 12(b), that, similarly, such a motion,

21 generally, is timely when it, too, is brought prior to the filing of an answer.   This is so because

22 defendants have ready access to the CDCR records, or lack thereof, to support the motion and, if

23 they do not, they have the means to seek an extension of time before filing an answer from the

24 court to be permitted to gather the requisite information.  Moreover, this litigation had been

25 _____

26         [7] Defendant Williams brought his motion for summary judgment a few days later, on
   11/26/08 (docket # 110), shortly before the deadline of 11/28/06.

proceeding for nearly three years before defendants brought the instant motion and this court has

expended time and resources on a previous discovery motion by plaintiff (opposed by

defendants) resulting in an order and issuance of a subpoena which directed the moving

defendants' counsel to serve a subpoena on the appropriate CDCR official for the medical

records and prison disciplinary records of the inmate named Thornton, material relevant to the

allegations against the defendants who bring the present motion. See Order, filed on 7/25/07

(docket # 67).

This court has not been able to uncover any binding and conclusive authority on

the issuance of the timeliness, or lack thereof, of a nonenumerated 12(b) motion; however, the

undersigned finds that the reasoning set forth in a federal court in the Central District of

California, where the district judge found defendant's motion to dismiss for nonexhaustion of

administrative remedies, filed some ten months after the filing of the answer, untimely, best

encapsulates the position of the undersigned:

> Moving Defendant cites no case law which indicates that the issue
> of exhaustion of administrative remedies may only be raised
> through a motion for summary judgment. On the contrary, the
> Ninth Circuit has repeatedly found that "failure to exhaust
> nonjudicial remedies is a matter in abatement, not going to the
> merits of the claim, and as such is not properly raised in a motion
> for summary judgment." *Ritza v. International Longshoremen's
> And Warehousemen's Union, et al.*, 837 F.2d 365, 368 (9th
> Cir.1988) (citation omitted); *Inlandboatmens Union of the Pacific
> v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir.2002) ("We have
> held that a failure to exhaust non-judicial remedies must be raised
> in a motion to dismiss, and should be treated as such even if raised
> as part of a motion for summary judgment.")
>
> Under previously existing Ninth Circuit case law, Moving
> Defendant should have brought his challenge to Plaintiff's claims
> based on failure to exhaust administrative remedies *through a
> timely motion to dismiss* rather than a motion for summary
> judgment.
>
> The Ninth Circuit allows a Rule 12(b) motion *any time before the
> responsive pleading is filed.* See *Aetna Life Ins. Co. v. Alla
> Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir.1988) (citing
> *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1340-41 (9th
> Cir.1976) (In *Bechtel*, the Ninth Circuit noted that "while some

> courts hold that Rule 12(b) motions must be made within 20 days
> of service of the complaint, the rule itself only requires that such
> motions 'be made before pleading if a further pleading is
> permitted.'' ')

Thomas v. Baca, 2003 WL 504755, *2 (C.D. Cal. 2003) [emphasis added].

While, of course, defendants have not brought this motion technically within a motion for summary judgment, but, instead have brought it separately and a few days earlier than the motion for summary judgment filed as to defendant Williams, the reasoning is no less apposite. The undersigned is aware of conflicting decisions at the district court level within this circuit, see, e.g., Rigsby v. Schriro, 2008 WL 2705376, *1 n. 2 (D. Ariz. 2008) (finding that, where defendant simultaneously filed an answer – asserting the failure to exhaust defense – and an unenumerated motion to dismiss for failure to exhaust administrative remedies, such a motion "need not be made before answering"); Tyner v. Schriro, 2008 WL 752612, *1 n. 1 (D. Ariz. 2008) (same); see also, Thrasher v. Garland, 2007 WL 3012615 *2 (W.D. Wash. 2007) (asserting that, although a motion to dismiss pursuant to the specifically enumerated grounds of Rule 12(b) should be brought before the answer is filed, a nonenumerated 12(b) motion "need not necessarily be brought prior to the filing of the answer."[8]

However, this court finds the reasoning of Thomas v. Baca, supra, to better promote judicial efficiency and economy while at the same time limiting unfair prejudice to a pro se prisoner plaintiff. As noted, the state attorney general has virtually unlimited access to CDCR records. Defendant's counsel makes no effort whatever to explain why such a motion could not have been brought prior to the filing of the answer on behalf of these two defendants, and prior to the time when this court had expended resources and time to inter alia screen the case, seek

---

[8] Moreover, some courts in this district specifically schedule the filing of nonenumerated 12(b) motions two or three months beyond the filing of the answer, which, of course, is certainly and entirely within a court's discretion. See, e.g., Hill v. Williams, 2008 WL 5212591, *7 (E.D. Cal. 2008); Johnson v. Shawnego, 2007 WL 509226 (E.D. Cal. 2007).

counsel, adjudicate a discovery dispute concerning material relevant to plaintiff's allegations related to the two defendants who are the subject of this motion. Nor is the question of exhaustion, or lack thereof, of administrative remedies a jurisdictional one. Wyatt v. Terhune, 315 F.3d 1108, 1119 n. 13 ("PLRA exhaustion is not a jurisdictional requirement.") Accordingly, the undersigned will not reach the merits of defendants Moore's and Frates' motion as this court finds the motion to be untimely.

Motions to Compel

*First Motion*

Plaintiff moves, pursuant to Fed. R. Civ. P. 37, to compel responses to four interrogatories served upon defendant Dr. Williams, to all of which the defendant, through his counsel, objected "as over broad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence." First Motion to Compel (MTC1), pp. 1-7.

*Discussion*

The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad. Discovery may be obtained as to any unprivileged matter "relevant to the claim or defense of any party...." Id. Discovery may be sought of relevant information not admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The court, however, may limit discovery if it "....is unreasonably cumulative or duplicative," or can be obtained from another source "that is more convenient, less burdensome, or less expensive"; or if the party who seeks discovery "has had ample opportunity by discovery ...to obtain the information sought"; or if the proposed discovery is overly burdensome. Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

In his first interrogatory to defendant Williams, plaintiff asks this defendant to "list all state civil actions alleging medical malpractice, where you were named as a defendant brought against you since September 23, 2001." MTC1, p. 6. In Interrogatory no. 2, plaintiff seeks a list of "all federal actions brought under 42 U.S.C. § 1983," that were filed that name Williams as a defendant. MTC1, p. 6. Interrogatory no. 3 asks for the names and numbers of all

CDCR inmates who have died while in the custody or control of the Mule Creek State Prison (MCSP) warden, since 9/23/01. MTC1, p. 6. As to this interrogatory, plaintiff asks the court to take judicial notice of the 10/03/05, Findings of Fact and Conclusions of Law re: Appointment of Receiver in Plata v. Schwarzenegger, CO1-1351 (THE), wherein the court ordered reviews of inmate deaths, finding that that was a viable method by which to determine the indifference of CDCR doctors. MTC1, p. 2. Plaintiff believes that if such reviews showed inadequate medical care by defendant Williams, that such evidence should be before the jury in this case. In the fourth interrogatory, plaintiff seeks "the coroner's finding as to the cause of death of each inmate identified in" response to the third interrogatory above. MTC1, p. 6. As noted above, defendant in response posed the same objections to each of these interrogatories, claiming the inquiries were overbroad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, without providing any further or substantive response. MTC1, pp. 1-2, 6-7.

As to Interrogatory no. 1 and no. 2, plaintiff contends that since defendant was in the full-time employ of CDCR from 9/23/01 to 6/12/08, the state attorney general's office should have ready access to the names of all federal and state lawsuits in which it served as defense counsel for defendant Williams. MTC1, p. 2. Plaintiff maintains that the evidence he seeks is both relevant and admissible because it may show "[m]ultiple incidents of improper or delayed medical care" which would be admissible to demonstrate a state of mind of deliberate indifference to inmate medical needs. MTC1, p. 2, citing Todaro v. Ward, 565 F.2d 48, 52 (2nd Cir. 1977). In Todaro, supra, cited by plaintiff, the Second Circuit, quoting Bishop v. Stoneman, 508 F.2d 1224 (2d Cir. 1974), stated "that 'a series of incidents closely related in time . . . may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners.'" Plaintiff also relies on Fed. R. Evid. 608 for support. Under Rule 608(a)(1), a witness's credibility "may be attacked or supported by evidence in the form of opinion or reputation..., but is limited to evidence of the witness's "character for truthfulness or untruthfulness...." Under Rule 608(b), specific instances of the witness's conduct may be

inquired into under cross-examination if they concern the witness's character for truthfulness or lack thereof, or concern "the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

Defendant Williams argues that the Todaro case is not applicable as that case concerned alleged systemic deficiencies of a prison's medical health procedure in which prison administrators were deliberately indifferent because they had actual knowledge of numerous instances of inadequate care. Opposition (Opp.), pp. 3-4. Rather than a systemwide deficiency, according to defendant Williams, plaintiff is claiming that defendant Williams had personal knowledge of the tests and x-rays that had been ordered for plaintiff but failed to schedule them personally. Opp., p. 4. Evidence of a systemic deficiency at MCSP would, therefore, not be relevant or lead to admissible evidence in this case, he argues. Id.

In reply, plaintiff contends that defendant Williams mis-characterizes the allegations of the second amended complaint, the operative complaint in this case, claiming that he has dropped the allegations that Williams failed to schedule his for blood tests and shoulder x-rays and that his allegation as to defendant Williams now rests on a claim that he failed to provide the doctor-ordered and doctor-recommended surgery to plaintiff's right shoulder. Reply, pp. 1-2. Plaintiff is quite explicit that he does not intend to proceed on a claim that defendant Williams is responsible for any delayed blood tests and x-rays. Id., at 2.

As an aside, it is apparent that defendant does not reference the correct version of the complaint. In a filing directed to one of plaintiff's motion for sanctions (see below), defendants' counsel specifically and incorrectly asserts that the court has never ruled on plaintiff's motion to amend, and, therefore, the operative complaint remains the original complaint. See Opp. to motion for sanctions, filed on 8/14/08 (docket # 92). However, in an Order, filed more than a year earlier, on 7/25/07, the court was explicit in stating that this matter was proceeding on a second amended complaint, to which the defendants had filed a statement of non-opposition; the second amended complaint was deemed filed, nunc pro tunc, as of 1/12/07.

See Order filed on 7/25/07 (docket # 66).[9]  It is troubling that counsel for the defendant is so

confused as to the operative pleading that is the basis for this action at this point, but the court

does not ascribe the nefarious intent which plaintiff does to what appears to be a careless

oversight at worst.  Nor does the court see how the fact that plaintiff is now claiming a long delay

of shoulder surgery rather than a delay of medical tests significantly changes the posture of the

case with respect to the answers he seeks from defendant Williams.  Plaintiff does agree with

defendant that if he were trying to obtain evidence of system-wide medical care deficiencies,

such discovery would be irrelevant, but states that what he seeks, for example, as to Interrogatory

no. 3 & no. 4 (see below), is information regarding inmate deaths at Mule Creek State Prison

during defendant Williams' tenure as Chief Medical Officer.  Reply, pp. 2-3

        To return to the first two interrogatories, it is true that in Todaro, supra, the court

was addressing the claims of the constitutional deficiency of an entire facility's medical care

procedures brought on behalf of inmates at a correctional facility for women, resulting, inter alia,

in inmates being "forced to endure unnecessary pain as a result of delay...."  Todaro, 565 F.2d at

51.  It also appears that plaintiff should have relied on Fed. R. Evid. 404(b), rather than Rule

608, to support his motion to compel a response by defendants.  Under Rule 404(b), in relevant

part:

> Evidence of other crimes, wrongs, or acts not admissible to prove
> the character of a person in order to show action in conformity
> therewith.  It may, however, be admissible for other purposes, such
> as proof of motive, opportunity, intent, preparation, plan,
> knowledge, identity or absence of mistake or accident....

It is unclear to the court how any of the information sought could lead to admissible evidence

related to Rule 608, except – to the extent plaintiff might anticipate using it, depending on what

any discovery might show and on what defendant might say if cross-examined – under 608(b) for

---

[9]  It is ironic that the same counsel who filed a statement of non-opposition to the
proposed second amended complaint was maintaining more than a year later that the operative
complaint was still the original one filed.

1  impeachment purposes against defendant in a cross-examination.  It seems more plausible that

2  plaintiff might attempt to show knowledge or absence of mistake under Rule 404(b).

3        In any event, defendant too narrowly restricts the applicability of <u>Todaro</u>, wherein

4  it is observed that repeated examples of delayed or denied medical treatment "bespeak a

5  deliberate indifference by prison authorities to the agony engendered by haphazard and ill-

6  conceived procedures."  If plaintiff were permitted the information he seeks in response to

7  Interrogatory nos. 1 and 2, such discovery might lead to the discovery of admissible evidence to

8  show that defendant Williams engaged in a procedure of delaying or denying doctor-prescribed

9  surgical treatment.  On the other hand, as framed the requests could be overbroad.  The court will

10 require that defendant Williams provide a substantive response to Interrogatory no. 1 and to no. 2

11 for the period of time from 9/23/01 to the present.  However, the defendant need make his

12 responses only as to any claims made against him in state or federal court alleging medical

13 treatment delayed or denied.  The motion as to these interrogatories, as modified, is granted.

14       With regard to Interrogatories no. 3 and no. 4, while CDCR must be required to

15 keep a record of inmate deaths, along with a finding of cause of death, and could identify those

16 inmates from MCSP who have died since 9/23/01, such information is not sufficiently germane

17 to plaintiff's specific claim as to defendant Williams for the court to direct a further response.

18 The motion as to these interrogatories, 3 and 4, will be denied.

19                       *Second Motion and Supplement*

20       In his second motion to compel responses, plaintiff asks that defendant Williams

21 be required to respond to the interrogatories he has identified as set b (rather than set 2),

22 complaining that defendant Williams failed to make any response whatever to interrogatories in

23 that set numbered 1 through 7.  Second Motion to Compel MTC2, pp. 1-4.  This motion will be

24 denied on that basis, however, because in a supplement to this motion, plaintiff no longer

25 maintains that defendant failed to respond altogether but instead complains of the alleged

26 deficiencies of defendant's responses to Interrogatory nos. 2 through 7.  Supplement to MTC2

(MTC2 Supp.), pp. 1-18. These interrogatories largely concern what tasks/duties defendant Williams performed while working on a special assignment involving the reorganization of CDCR, and what he earned while working on special assignment while earning a salary as CMO at MCSP. MTC2 Supp., pp. 1-3. Plaintiff professes to need this information because he intends to use it under Fed. R. Evid. 608 as impeachment to show defendant's untruthfulness under penalty of perjury. Id., at p. 3. Further, he seeks to show that defendant Williams engaged in a fraud against the State of California by "illegally collecting two full-time salaries." Id. Plaintiff also claims that defendant's counsel is an "accessory after the fact" in attempting to "cover up" defendant Williams' federal perjury violations and his putative fraud against the state. Id., at 3-4. Plaintiff includes as an exhibit to his motion, what appears to be a copy of a declaration by defendant B. Williams in another case wherein he was a defendant, <u>Macahilas v. Taylor, et al.</u>, 2:06-CV-00502 GEB KJM PC. Within this declaration, defendant attests to his "routine administrative functions" as chief medical officer/health care manager at MCSP; he also declares under penalty of perjury that he was on medical leave from February 2004 through August of 2004, after which upon returning to work he was "on special assignment involving the reorganization of the California Department of Corrections until June 2006," and worked during that period out of CDCR headquarters in Sacramento. Id., at 12-13, ¶¶ 2, 4.

Plaintiff then points to his own requests for admission set (a) propounded upon defendant Williams, wherein defendant Williams admitted receiving a salary for full-time employment as Mule State Creek Prison's Chief Medical Officer from January 2003, until at least May 28, 2008, but denied working on special assignment on CDC reorganization from August 2004, until June 2006. MTC2 Supp., pp. 3, 15. Defendant Williams also denied that his special assignment duties were in addition to his duties as MCSP's CMO, and that he received compensation for the special assignment as well as for his full time employment as MCSP CMO from August 2004, until June 2006. Id., at 15-16. Plaintiff maintains that defendant Williams was unaware that plaintiff had the defendant's declaration from the other case, stating that he had

14

worked on special assignment from August 2004, to June 2006, at CDC headquarters. MTC2 Supp., p. 3.

In opposition, defendant's then-counsel claims that plaintiff seeks inadmissible character evidence pursuant to Fed. R. Evid. 404, and further states in a footnote that she is at a loss to understand why plaintiff believes that if defendant Williams worked on special assignment for the receiver in Plata, and received extra compensation for doing so, that would be evidence of bad character. Opp., p. 2. She asks the court to admonish plaintiff for a frivolous filing for seeking discovery responses before they were due. Id., at 2-3.

In response to the supplement to the second motion to compel at issue herein, defendant asserts that plaintiff's interrogatories numbered 3 and 4 are duplicative of no. 2. Supp. Opp., p. 4. In Interrogatory no. 2, plaintiff asks defendant Williams to "summarize" his special assignment "tasks" from August 2004, June 2006; in Int. no. 3, plaintiff asks for defendant Williams to describe his special assignment "responsibilities" and Int. no. 4, plaintiff asks for his special assignment duties. Id. Defendant is correct that nos. 3 and 4 are duplicative on the face of it, notwithstanding plaintiff's representation otherwise in his reply. In addition, the court agrees with defendant Williams that the information sought is not remotely relevant to his claims that he has been and continues to be denied adequate medical care with regard to the treatment, or lack thereof, of his shoulder.

Defendant's counsel at the time, Constance Picciano, than goes on to aver that plaintiff's premise that defendant Williams committed perjury in response to plaintiff's requests for admission is false, in that counsel states that they were counsel's responses, not those of the defendant, and were not signed under penalty of perjury. Supp. Opp., p. 4. Counsel references the opposition to plaintiff's motion for sanctions wherein she explained that the error in denying defendant Williams' special assignment from August of 2004, to June 2006, was counsel's error that was subsequently corrected by an amended response. Id. Defendant's counsel once again makes the erroneous assertion that the court has not yet ruled on plaintiff's motion as to his

second amended complaint, so she cannot understand how an allegation that involved plaintiff's interview with defendant Williams in 2002, and the failure to schedule blood tests and x-rays can have any relation to defendant Williams' assignments in August, 2004 to June, 2006. Id., at 5. As noted, plaintiff insists that his claim in his second amended complaint centers on defendant Williams' alleged failure to treat or to obtain surgery for plaintiff's shoulder, evidently an on-going complaint, and is not one limited to delayed blood tests or x-rays which another doctor had ordered and which plaintiff sought to have performed in an alleged 2002 interview with defendant Williams, but which did not occur until 2004. Nevertheless, the information plaintiff seeks by way of this set of interrogatories simply has no bearing on whether or not plaintiff received appropriate medical treatment by this defendant and the information sought is not reasonably calculated to lead to the discovery of admissible evidence. How this defendant was compensated and whatever duties he performed on special assignment for CDCR during 2004 up through part of 2006 does not impact plaintiff's claim against this individual. Whether defendant's counsel made an error in responding in the request for admission in denying Williams' special assignment, which has evidently since been amended, or whether defendant himself had any involvement in such an assertion, plaintiff has the initial response denying the special assignment and he has Williams' declaration from another case attesting to the special assignment for the same period, for which period this defendant was assigned to CDCR headquarters in Sacramento. For what it is worth, plaintiff has the admission by the defendant that for the period of time that includes the CDCR special assignment project period, this defendant received compensation for full-time MCSP CMO. Should this matter proceed to trial and defendant Williams' credibility be at issue, plaintiff may seek to admit the evidence he already has to challenge it. As for plaintiff's apparent hypothesis that this defendant was drawing two salaries for the same period and committing a "fraud" upon the state, plaintiff makes no showing whatever that any information in that regard would support his claim of inadequate medical care. As defendant's counsel points out, CDCR would have to be aware of which

16

personnel was being paid for which duties, and in any event, if plaintiff's point is that defendant Williams was employed as CMO of MCSP from August 2004 until June 2006, while he was performing duties in Sacramento and thus failed to provide plaintiff adequate medical attention during that period or to see that his MCSP administrative duties were addressed, plaintiff already has proof of the period of time of the special assignment. The second motion to compel and supplement thereto will be denied.

Motions for Sanctions

Plaintiff filed a motion for sanctions on 9/05/08, and another on 12/09/08. In the first motion,[10] plaintiff asks that the court impose Rule 11 sanctions upon defendants' current counsel, Matthew Kubicek, who after declaring under penalty of perjury that he sought a thirty-day extension of time for the sole purpose of taking plaintiff's deposition, thereafter served plaintiff with a "notice of taking deposition and request for production of documents." First Motion for Sanctions (Mtn1), pp. 2, 5-14. Plaintiff argues that Fed. R. Civ. P. 11(c)(1)(A) (now 11(c)(2)), permitting counsel 21 days to change his declaration under penalty of perjury does not apply in this context. Id., at 2.

In opposition, defendant's counsel argues that this is plaintiff's third motion for sanctions, that counsel did not commit perjury in simply asking for plaintiff to produce documents at his deposition in accordance with Fed. R. Civ. P. 30, and that plaintiff did not comply with the safe harbor provisions of Fed. R. Civ. P. 11 in filing his motion. Opposition (Opp.), pp. 1-2. While defendants' counsel understands that plaintiff may have been confused about the deposition notice including a request for documents to the deposition, he maintains that plaintiff's contention that he had no duty either to allow defendants to change the notice or counsel's declaration has no merit. Id., at 2.

\\\\\

---

[10] As defendant's counsel points out, this is actually plaintiff's third motion for sanctions.

Under Fed. R. Civ. P. 30(b)(2):

> If a subpoena duces tecum is to be served on the deponent, the materials designated for production, as set out in the subpoena, must be listed in the notice or in an attachment. The notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition.

Plaintiff is correct that the discovery deadline for written discovery requests to be served per the 5/28/08, scheduling order was 60 days before the discovery cut-off date of 8/29/08, and that defendant did represent to court that the extension was solely sought for the purpose of deposing plaintiff. However, the request for plaintiff to produce certain documents contained in the notice of deposition, while construed by plaintiff as an end run around the discovery cut-off date, is contemplated within the applicable rule, Rule 30, and is not sufficiently egregious for the court to impose sanctions for a misrepresentation or perjury before the court, although the fact that defendant's counsel does, apparently, seek to invoke his entitlement to the safe harbor protections of Rule 11 does suggest that he has some doubt as to the propriety of having requested the document production when he had received an extension based on his declaration under penalty of perjury that his sole purpose was to depose plaintiff.

Rule 11(b) states that by presenting, inter alia, a written motion to the court, "an attorney or unrepresented party certifies that to the best the person's knowledge, information and belief..." it is not being submitted, among other provisions, "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation...." Plaintiff claims that counsel's sworn declaration signifies something beyond simply certifying a pleading. However, it is clear that plaintiff did not comply with the safe harbor provision of Rule 11(c)(2).[11] Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 789 (9th Cir. 2001) (service of

---

[11] "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ.

1  motion 21 days before filing is a mandatory procedural requirement under Rule 11(c)(1)(A))[12];

2  Holgate v. Baldwin, 425 F.3d 671, 678 (9th Cir. 2005) (strict enforcement of safe harbor

3  provision requires reversal of sanctions award to challenging party even with frivolous

4  underlying filing).  This motion will be denied.

5       In the second motion, much of plaintiff's motion appears directed at defendants'

6  motion to dismiss as administratively unexhausted plaintiff's claims against defendants Moore

7  and Frates.  As this court recommends denial of that motion, the court will not address plaintiff's

8  allegations that defendant's counsel "lied" in his representations within that motion, for which

9  assertion, in any event, plaintiff does not appear to have a sufficient basis.  Plaintiff also presents

10 again the allegations that form the basis of his earlier motion for sanctions, addressed above,

11 which the court will not revisit.

12      Plaintiff complains that in the defense counsel's motion for the court to compel

13 plaintiff's deposition re-appearance, which motion the court granted, that counsel essentially

14 misrepresented what occurred at the initial deposition and attached partial exhibits that did not

15 fully represent what plaintiff had testified to and which made it difficult for plaintiff to oppose

16 the motion.  However, the court has reviewed the entire lodged transcript of that abbreviated

17 deposition taken on 9/25/08 and finds that counsel's representation as to plaintiff's lack of

18 cooperation is repeatedly therein confirmed.

19      Plaintiff also contends that plaintiff was told by deputy attorney general Kubicek

20 and supervising deputy attorney general Tracy Hendrickson, who was also in attendance at the

21 second deposition, taken on 11/06/08, "that if he did not return to his cell, get all of his papers

22 connected with this case, this Court would dismiss this case."  Motion for Sanctions, filed on

23 12/09/08, p. 9.  However, in opposition, counsel for defendants counters that such a claim is "a

24

25 P. 11(c)(2).

26       [12] Formerly Rule 11(c)(1)(A) contained the safe harbor provision.

19

complete fabrication." Opp., p. 2. In support of the opposition, declarations are submitted, under penalty of perjury, from Deputy Attorney General Kubicek, Supervising Deputy Attorney General Hendrickson, Correctional Officer Shea Corsaletti, and Certified Shorthand Reporter Mandy Medina, all of whom attest to their presence at the deposition and to Ms. Hendrickson's, while of the record, having informed plaintiff that while he was free not to bring documents to the deposition, if he nevertheless sought to introduce them at trial, that Mr. Kubicek would object to their admissibility and the court might sustain the objection; stating that is was in plaintiff's best interest to produce the documents. Further, each declarant flatly asserts that at no time did either Kubicek or Hendrickson tell plaintiff that if he did not retrieve all the papers connected from his cell, the court would dismiss his case. Opp., Declarations of Shea Corsaletti, Mandy Medina, Tracy Hendrickson, Matthew Kubicek. The documents at issue were some thirty requests that plaintiff testified to having filled out regarding his injuries in 2001, of which deputy attorney general declares he had only seen one. Opp., Kubicek Dec., ¶ 4. In the court's review of the transcript of the second deposition, it is evident that for some reason the odd-numbered pages are missing and therefore the undersigned cannot locate that portion of the deposition wherein plaintiff specifically asserted that he had filed thirty requests from the time of his 2001 injury until he received his x-rays in 2004, although it is clear in the portion that is lodged that plaintiff did indicate that he had filed written requests concerning his medical needs to which there was no response. Plaintiff's 11/06/08 Deposition, pp. 60, 62. Plaintiff simply does not, despite his protestations in the reply, provide sufficient evidence to support any basis for the court to impose sanctions upon defendants by this motion and it will be denied.

Motion for Summary Judgment

      The motion for summary judgment will be vacated from the court's calendar without prejudice for at least two reasons. The first reason for vacating the motion is that the court has directed defendant Williams to produce some discovery (see Fed. R. Civ. P. 56(f)), and the second is because defendants' counsel has failed to lodge a complete copy of the 11/06/08

deposition with the court. Upon service of the production herein ordered upon plaintiff and lodging of a complete deposition, defendants may re-notice the motion for summary judgment.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel further discovery responses as to defendant Williams, filed on 7/31/08 (docket # 89), be granted in part and denied in part: Granted as to Interrogatories no. 1 and no. 2, but only as modified above; and Denied as to Interrogatories no. 3 and no. 4; and

2. Defendant Williams has twenty days to provide the responses to plaintiff as to Interrogatories 1 and 2, and to file proof of service of the responses in this court.

2. Plaintiff's motion to compel further responses to defendant Williams (set b), filed on 8/05/08 (docket # 90), including his supplement, filed on 8/12/08 (docket # 91), is denied.

3. Plaintiff's motion for sanctions, filed on 9/05/08 (# 104), is denied.

4. Plaintiff's motion for sanctions, filed on 12/09/08 (# 114), is denied.

5. Defendant's motion for summary judgment, filed on 11/26/08 (# 110), is vacated without prejudice from the court's calendar, subject to re-notice as set forth above.

IT IS HEREBY RECOMMENDED that Defendants Moore's and Frates' motion to dismiss for failure to exhaust administrative remedies, filed on 11/14/08 (docket # 109), be denied as untimely.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

\\\\\\

that failure to file objections within the specified time may waive the right to appeal the District

Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 03/18/09

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

GGH:009
reed0060.ofr