1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RONALD REED,

11            Plaintiff,                        No. 2:05-cv-0060 JAM KJN P

12        vs.

13   B. WILLIAMS, et al.,
                                       ORDER &
14            Defendants,             FINDINGS AND RECOMMENDATIONS

15   _____/

16   I. Introduction

17            Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42

18   U.S.C. § 1983.  Pending before the court is defendant Dr. Brett Williams' ("Williams") motion

19   for summary judgment, filed on April 14, 2009 (Dkt. No. 126), to which plaintiff filed his

20   opposition on May 5, 2009 (Dkt. No. 128).[1]  Defendant filed a reply on May 18, 2009 to which

21   plaintiff filed an additional opposition.  Dkt. Nos. 131, 132, 133.

22

23

24   _____

25        [1] Defendant Williams previously filed this motion for summary judgment on November
     26, 2008, but the motion was vacated without prejudice and subject to re-notice as defendant
26   Williams was ordered to produce additional discovery and counsel had failed to lodge a complete
     copy of the 11/6/08 deposition with the court.  Dkt. No. 122 at 20-21.

II.  Second Amended Complaint

This case is proceeding on the second amended complaint (SAC), filed January 12, 2007, against defendants Williams, Correctional Sergeant Frates and Correctional Officer Moore.  Only defendant Williams has moved for summary judgment in the instant motion.

Plaintiff alleges that defendants Moore and Frates subjected plaintiff to cruel and unusual punishment and were deliberately indifferent to a substantial risk of serious harm by placing him in and then failing to remove him from an unsafe situation.  Plaintiff contends that defendants failed to protect him, even promoting inmate-on-inmate violence, in violation of his rights under the Eighth Amendment, as well as his due process rights under the Fourteenth Amendment.  As a result, plaintiff was assaulted by another inmate thereby suffering physical and emotional injuries.  SAC at 10-12.

The attack on plaintiff resulted in lacerations and bruises to plaintiff's face and body, severe trauma to both his shoulders, broken bones in his right hand and a broken nasal passage.  Plaintiff also contends that he contracted Hepatitis C from the inmate who attacked him.  SAC at 9.

The attack occurred on July 9, 2001.  After submitting requests for medical treatment, in a response on August 5, 2002, non-defendant Dr. Douglas ordered x-rays and blood tests for plaintiff.  However, Mule Creek State Prison (MCSP) medical staff did not comply with the orders, after which plaintiff submitted additional inquires as to why the orders were ignored.  In response, defendant Williams told plaintiff he had reviewed plaintiff's medical file, assuring him that plaintiff would receive the doctor-ordered x-rays and blood tests and any treatment that was necessary.  SAC at 9-10.

Not until approximately nineteen months later, on March 18, 2004,  in response to an administrative appeal by plaintiff, were the blood tests that had been ordered by Dr. Douglas on August 5, 2002, performed at which point plaintiff's Hepatitis C was discovered.  Only on May 21, 2004, were the x-rays taken that had been ordered by Douglas on August 5, 2002.  The

x-rays revealed plaintiff's fractured distal right metacarpal and his shoulder injury which prompted further examination.  Additional diagnostic examination of the shoulder revealed that a steel rod needed to be inserted, for which surgery plaintiff was still waiting at the time of filing the instant second amended complaint, and from which untreated injury plaintiff allegedly suffers constant pain.  Plaintiff alleges that defendant Williams' inaction and deliberate indifference has resulted in further significant injury to his shoulder and the ongoing failure to treat his shoulder is likely to cause more injury.  SAC at 10, 12-13.

Plaintiff seeks monetary, including punitive, damages.

III.  Motion for Summary Judgment

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought should be rendered  if . . . there is no genuine issue as to any material fact, and that the movant  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a

3

1  circumstance, summary judgment should be granted, "so long as whatever is before the district
2  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
3  satisfied."  Id.

4          If the moving party meets its initial responsibility, the burden then shifts to the
5  opposing party to establish that a genuine issue as to any material fact actually does exist.  See
6  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
7  establish the existence of this factual dispute, the opposing party may not rely upon the
8  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
9  form of affidavits, and/or admissible discovery material, in support of its contention that the
10  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
11  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
12  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
13  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
14  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
15  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
16  1436 (9th Cir. 1987).

17          In the endeavor to establish the existence of a factual dispute, the opposing party
18  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
19  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
20  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary
21  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
22  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
23  committee's note on 1963 amendments).

24          In resolving the summary judgment motion, the court examines the pleadings,
25  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
26  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

4

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

IV.  Undisputed Facts

Plaintiff has not provided undisputed facts or responded to defendant's undisputed facts.  The court has sifted through plaintiff's opposition in an attempt to determine plaintiff's disputed and undisputed facts.

The following of defendant's undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed:

At all relevant times, plaintiff was incarcerated at Mule Creek State Prison ("MCSP").  DUF #1.  At all relevant times, defendant Williams was a licensed medical doctor and was the chief medical officer at MCSP.  DUF #2.  Part of Williams' responsibilities included participation and approval of Medical Authorization Review Committee ("MARC") decisions. Motion for SJ, Exh. B, at 2.  On July 9, 2001, plaintiff was involved in a fight with another inmate.  DUF #3.  Plaintiff was treated by a Medical Technician Associate on the day of the assault and the MTA's report does not reflect that plaintiff complained of any shoulder pain. DUF #4, 5.  On July 25, 2001, plaintiff was seen by a doctor to check on plaintiff's injured hands, but the report does not indicate any complaints of shoulder pain.  DUF #6, 7.  On July 18, 2002, more than a year after the fight, plaintiff submitted a form to the medical clinic stating that

he needed blood work to check for AIDS, Hepatitis C and other blood diseases as there was a lot of blood during the fight.  DUF #8.  There was no indication on the form of any shoulder injury or pain.  DUF #9.

On August 5, 2002, plaintiff was seen by Dr. Douglas, at which time plaintiff requested blood tests.  DUF #11.  Dr. Douglas ordered an x-ray of plaintiff's nose, but the medical report does not reflect any problems with plaintiff's shoulder.   DUF #13, 14; Motion for SJ, Exh. C, at 3-4.

There is no indication in the medical records before the court that defendant Williams met with or treated plaintiff in 2001, 2002 or 2003.  DUF #16, 17, 18.  On March 1, 2004, plaintiff filed an inmate appeal seeking the treatment discussed by Dr. Douglas in August 2002.  DUF #23.  There is no mention of defendant in the appeal.  DUF #24.  In an attachment to the 2004 appeal, plaintiff states that he suffered shoulder trauma during the fight with the other inmate in 2001.  Opposition, Exh. 15 at 4.  On March 15, 2004, plaintiff was given blood tests which indicated he had contracted Hepatitis C, and on April 30, 2004, x-rays were taken of plaintiff's nose.  DUF #25, 26.  On May 21, 2004, x-rays were taken of plaintiff's shoulder that revealed an old healed distal right fifth metacarpal fracture.  DUF #29.  On July 6, 2004, plaintiff's inmate appeal was partially granted.  Motion for SJ, Exh. A at 8.  While the partial grant was printed on a letter with defendant Williams' typed name, the signature is that of Troy Brimhall, as defendant Williams was on leave at that time.  DUF #30.

On October 20, 2004, plaintiff was transported to Doctors Hospital of Manteca and examined by Dr. Bradley Williams, who is a different doctor than defendant Dr. Brett Williams.  DUF #35.  Dr. Bradley Williams injected a steroid in the AC joint of plaintiff's right shoulder, ordered a second set of x-rays and noted that plaintiff may require a Mumford surgical procedure.  DUF #36, 37.  The second set of x-rays occurred on November 5, 2004, and showed the fracture was not seen and the shoulder appeared normal and unremarkable.  Motion for SJ, Exh. C, at 11.

On October 19, 2005, plaintiff received another x-ray of his shoulder that revealed the shoulder was normal and the acromioclavicular was unremarkable.  Motion for SJ, Exh. C, at 12.  On December 21, 2005, plaintiff received a consultation from Dr. Tanji at the Orthopedic Telemedicine Clinic, who recommended a follow up evaluation with Dr. Bradley Williams for consideration of a Mumford procedure.  DUF #42, 43.  On July 17, 2006, plaintiff was taken to UC Davis Medical Center and examined by Dr. William Page from the Department of Orthopedic Surgery.  DUF #44.  Dr. Page found that activities for plaintiff could be tolerated, plaintiff had a well preserved acromioclavicular joint that was stable on x-ray and plaintiff did not need a follow up in the Orthopedic Sports Clinic.  DUF #47.

On November 14, 2007, plaintiff received another x-ray that showed a normal right shoulder.  DUF #49.  On December 20, 2007, plaintiff was seen by Dr. Craig Lovett, an orthopedic surgeon, who recommended surgery.  Motion for SJ, Exh. C, at 17-18.  On February 1, 2008, Dr. Lovett performed surgery on plaintiff and stated the operation went smoothly and plaintiff was taken to the recovery room in good condition.  Motion for SJ, Exh. C, at 19-20.

V.  Disputed Facts

The disputed facts bring to light several problems with plaintiff's allegations against defendant Williams.  In the second amended complaint, plaintiff alleges that defendant told plaintiff at some point in 2002 that defendant would ensure that x-rays, blood tests and all necessary treatment would be provided.  SAC at 10.  These are the only allegations against defendant in the second amended complaint.  In plaintiff's deposition on November 6, 2008, plaintiff states that he only saw defendant once in 2002 for approximately 10 minutes. Opposition, Exh. 29, Deposition pg. 58:16-59:10; pg. 61:7-10.

Defendant Williams denies seeing plaintiff in 2002 or being involved in plaintiff's treatment.  DUF #15-22.

The opposition to summary judgment is the first time plaintiff makes allegations against defendant Williams that occurred in 2004.  This belated factual allegation is further

7

1   complicated by the fact that defendant stated in a declaration that from February 2004 to August

2   2004 he was on medical leave, and upon returning to work he was on special assignment

3   involving the reorganization of CDCR until June 2006.  Motion for SJ, Exh. B at 1.  Defendant

4   states that during that time period he was still listed as the Chief Medical Officer of MCSP.  Id.

5          In his opposition to summary judgment, plaintiff begins to refer to defendant, Dr.

6   Brett Williams, as "D. Williams" and "David Brett Williams".  Opposition at 8.  There is no

7   evidence that defendant Dr. Brett Williams has a "David" in his name.  However, several

8   exhibits that plaintiff has attached dated from 2004 contain a signature of a "D Williams."

9   Opposition, Exh. 8, 12, 13.  It appears that plaintiff is arguing that "D Williams" is defendant

10  Williams.

11         Defendant has submitted a declaration from a Health Record Technician

12  Supervisor at MCSP, D. Stacy, who stated that there was a nurse Debrina Williams who was a

13  nurse at MCSP during 2004 and the "D Williams" signatures belong to that nurse.  Dkt. No.131,

14  Reply to Opposition, Declaration of D. Stacy.  Defendant Williams also submitted a declaration

15  stating that the signatures on plaintiff's exhibits are not his writing or signature.  Dkt. No. 131,

16  Reply to Opposition, Declaration of B. Williams.

17         Further confusing this issue is that some of plaintiff's exhibits that contain a

18  disputed "Williams" signature also refer to Dr. Bradley Williams of Doctors Hospital of Manteca

19  in the document.  The court also notes that plaintiff's exhibit 13, in his opposition to summary

20  judgment contains the typed name of "D. Williams, FNP".  The court observes that "FNP" is

21  commonly known to refer to a nurse practitioner and not a doctor.

22         As a result, plaintiff now alleges that he was seen by defendant Williams several

23  times in 2004.  Defendant disputes plaintiff's assertions, and states that defendant never treated

24  or saw plaintiff as a patient.  DUF #15-22.  Plaintiff states that this allegation is therefore a

25  disputed material fact that must be determined at trial.  Opposition at 25.

26         Plaintiff also alleges many "facts" based on defendant's participation and approval

8

of Medical Authorization Review Committee ("MARC") decisions.[2]  Essentially, plaintiff asserts that all decisions approving or denying medical referrals for plaintiff were conducted by defendant.  Opposition at 13-15.  Plaintiff contends that the MARC decisions demonstrate the defendant was "doctor shopping" for a medical opinion to deny plaintiff surgery.  Opposition at 23.  Defendant denies all accusations of doctor shopping.

In addition, plaintiff refers to certain "facts" that are not properly supported.  For example, plaintiff maintains that Dr. Lovett, who performed the surgery, stated that part of the shoulder injury was caused by the six year delay in performing the surgery.  Opposition at 3.  However, upon reviewing the relevant exhibit, Dr. Lovett stated that plaintiff had been plagued with shoulder pain dating back 6 to 7 years.  Opposition, Exh.  16.  Plaintiff also contends that if called to testify, Dr. Lovett would testify that plaintiff's injuries developed over years of not having his shoulder surgically repaired.  Opposition at 12.  This is not properly considered evidence in opposition to summary judgment.

For the reasons sets forth below, the court recommends that the motion for summary judgment be granted and defendant Williams be dismissed from this action.  Even assuming arguendo that all of plaintiff's assertions are accurate and defendant personally treated plaintiff in all these instances, which the court has not found, plaintiff still has not demonstrated that a genuine issue of material facts exists in that defendant was deliberately indifferent to plaintiff's serious medical needs.  Moreover, even if plaintiff is correct and defendant personally approved and denied all MARC decisions, it would not show that defendant was deliberately indifferent to plaintiff's medical needs, and if nothing else would show an appropriate level of medical care.

---

[2] It is not clear if defendant took part in MARC decisions while not physically working at MCSP from 2004 to 2006.

VI. <u>Eighth Amendment Claim</u>

      <u>Legal Standard</u>

      In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992).

      A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

      In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. <u>Farmer</u>, 511 U.S. at 835. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. <u>Id</u>. at 836-37. Nor is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. <u>Id</u>. at 842.

      It is nothing less than recklessness in the criminal sense – subjective standard –

1  disregard of a risk of harm of which the actor is <u>actually</u> aware.  <u>Id</u>. at 837-42.  "[T]he official

2  must both be aware of facts from which the inference could be drawn that a substantial risk of

3  serious harm exists, and he must also draw the inference."  <u>Id</u>. at 837.  Thus, a defendant is liable

4  if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by

5  failing to take reasonable measures to abate it."  <u>Id</u>. at 847.  "[I]t is enough that the official acted

6  or failed to act despite his knowledge of a substantial risk of serious harm."  <u>Id</u>. at 842.  If the risk

7  was obvious, the trier of fact may infer that a defendant knew of the risk.  <u>Id</u>. at 840-42.

8  However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

9           Also significant to the analysis is the well established principle that mere

10  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

11  Amendment violation.  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996); <u>Franklin v.</u>

12  <u>Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, a physician need not fail to treat an

13  inmate altogether in order to violate that inmate's Eighth Amendment rights.  <u>Ortiz v. City of</u>

14  <u>Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical

15  condition, even if some treatment is prescribed, may constitute deliberate indifference in a

16  particular case.  <u>Id</u>.

17           Additionally, mere delay in medical treatment without more is insufficient to state

18  a claim of deliberate medical indifference.  <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766

19  F.2d 404, 407 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

20  no requirement that the delay cause "substantial" harm.  <u>McGuckin</u>, 974 F.2d at 1060, citing

21  <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-40 (9th Cir. 1990).  A finding that an inmate was

22  seriously harmed by the defendant's action or inaction tends to provide additional support for a

23  claim of deliberate indifference; however, it does not end the inquiry.  <u>McGuckin</u>, 974 F.2d at

24  1060.  In summary, "the more serious the medical needs of the prisoner, and the more

25  unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff

26  has established deliberate indifference on the part of the defendant."  <u>Id</u>. at 1061.

1    Superimposed on these Eighth Amendment standards is the fact that in cases

2    involving complex medical issues where plaintiff contests the type of treatment he received,

3    expert opinion will almost always be necessary to establish the necessary level of deliberate

4    indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

5    may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

6    treatment he received equated with deliberate indifference thereby creating a material issue of

7    fact, summary judgment should be entered for defendants.  The dispositive question on this

8    summary judgment motion is ultimately not what was the most appropriate course of treatment

9    for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

10   criminally reckless.

11            Analysis

12            Plaintiff alleges he had a serious medical need with respect to his shoulder injury

13   from 2002 to 2004, when he alleges it went untreated, and then after 2004 when it was treated

14   improperly and only after a lengthy delay.  Defendant argues that there is no evidence that

15   plaintiff suffered from a serious medical need from 2002 to 2004.  Motion for SJ at 9.  While the

16   court tends to agree that the alleged serious medical need in 2002 is questionable, the court will

17   assume for purposes of this motion that during the relevant time period of this case, plaintiff

18   suffered from a serious medical need.

19            2002 - 2004

20            Even assuming that all of plaintiff's allegations are true, plaintiff has failed to

21   demonstrate that defendant was deliberately indifferent to plaintiff's medical needs in the period

22   from 2002 to 2004.

23            It is undisputed that in 2002, non-defendant Dr. Douglas was treating plaintiff for

24   injuries to plaintiff's nose and potential blood diseases.  The only alleged contact defendant

25   Williams had with plaintiff in 2002 was at an unknown date, for ten minutes, when defendant

26   Williams assured plaintiff that x-rays, blood tests and all other necessary treatment would be

provided.  Even if defendant did meet with plaintiff at this time, there is no indication in the
record that plaintiff was suffering from any shoulder injuries.  Nor is there any evidence that
defendant caused any delay in plaintiff receiving treatment, other than plaintiff's unsupported
assertions.

Plaintiff states that no treatment was provided until plaintiff filed an inmate
appeal nearly two years later in 2004.  It is not entirely clear from plaintiff's complaint or
opposition to summary judgment what treatment was required in this time period or why plaintiff
waited so long to file an appeal to obtain treatment.

Plaintiff has failed to set forth sufficient facts that link defendant Williams to the
alleged constitutional deprivation.  It is required that there be an actual connection or link
between the actions of the defendant and the deprivation alleged to have been suffered by
plaintiff.  See Rizzo v. Goode, 423 U.S. 362, 377 (1976).  "A person 'subjects' another to the
deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act,
participates in another's affirmative acts or omits to perform an act which he is legally required to
do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740,
743 (9th Cir. 1978).

Any failure to treat plaintiff cannot be attributed to defendant Williams, even if
defendant did meet plaintiff once in 2002.  Plaintiff has presented no additional facts that
defendant was somehow responsible for denying plaintiff treatment.  It would seem logical that
any problems with plaintiff's treatment should have been discussed with Dr. Douglas who was in
fact treating plaintiff.  Plaintiff has made no allegations against defendant Williams for any other
occasions in 2002 or 2003.  Plaintiff has failed to allege sufficient facts that would meet the high
threshold of deliberate indifference with respect to defendant.

2004 - 2008

Plaintiff alleges that during this time period, defendant Williams was responsible
for the delay in plaintiff receiving surgery and defendant was "doctor shopping" in an attempt to

13

prevent surgery.  The court notes that plaintiff's shoulder injury during this time period qualifies as a serious medical need under the Eighth Amendment.  However, the treatment that plaintiff received was quite thorough, and defendant was not deliberately indifferent to plaintiff's medical needs, assuming that defendant even met or treated plaintiff during this time.  As noted above, for purposes of this motion the court will assume that defendant did treat plaintiff even though plaintiff's factual bases for these assertions are severely lacking.

The record of undisputed facts before the court shows a great deal of medical treatment that was provided to plaintiff with respect to his shoulder injury.  In May 2004, x-rays were taken of the shoulder that revealed a healed distal fifth metacarpal fracture.  DUF #35.  Several months later in October 2004 plaintiff was transported to an outside hospital where he was treated and it was noted that surgery may be required.  DUF #36, 37.  More x-rays were taken in November 2004 that showed the shoulder appeared normal and unremarkable.  Motion for SJ, Exh. C, at 11.

Approximately a year later in October 2005, plaintiff received more x-rays that showed the shoulder was normal and unremarkable.  Motion for SJ, Exh. C, at 12.  In December 2005, plaintiff was taken to a second outside doctor who thought surgery may be needed, but a follow up evaluation should occur first.  DUF #42, 43.  In July 2006, plaintiff met with a third outside doctor at the UC Davis Department of Orthopedic Surgery who stated that plaintiff could continue his activities as tolerated and did not need follow up in the Orthopedic Sports Clinic.  Motion for SJ, Exh. C, at 15.  Plaintiff reported to this doctor that he has persistent pain, particularly when he works out.  Id.  It appears that plaintiff was still able to do many of his normal activities.

Plaintiff received another set of x-rays in November 2007.  DUF #49.  Plaintiff was seen by a fourth outside doctor in December 2007 regarding persistent pain in his shoulder.  Motion for SJ, Exh. C, at 17-20.  That doctor recommended surgery which was carried out approximately six weeks later.  Id.

1   Plaintiff alleges that defendant sought out a doctor who would conclude that

2   surgery was unnecessary.  Opposition at 23.  Plaintiff's allegation is contradicted by the

3   evidence.  Plaintiff was seen by many doctors at MCSP and several outside doctors.  The first

4   three outside doctors who treated plaintiff did not conclude that surgery was required.  When the

5   fourth outside doctor believed surgery was needed, plaintiff received the surgery approximately

6   six weeks later.  If anything, the evidence could be more easily interpreted to show that defendant

7   or the prison officials overseeing plaintiff's treatment were seeking out a doctor who would

8   require surgery.  Regardless, plaintiff's allegations are woefully inadequate to support deliberate

9   indifference.

10   Plaintiff's assertion that the delay in receiving the surgery was a violation of the

11   Eighth Amendment is also unsupported by the evidence and must be dismissed as plaintiff has

12   failed to demonstrate a genuine issue as to any material fact.  Mere delay in medical treatment

13   without more is insufficient to state a claim of deliberate medical indifference.  Shapley v.

14   Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Plaintiff has not shown

15   that the delay in receiving the surgery caused substantial harm and it is undisputed that plaintiff

16   was receiving treatment prior to the surgery.  Even assuming arguendo the delay in surgery was a

17   constitutional violation, plaintiff has failed to present sufficient evidence that defendant

18   Williams' actions were responsible for the delay.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

19   1978).  Assuming that defendant did treat plaintiff in this time period and was responsible for all

20   medical referrals, there is not sufficient evidence to show that defendant's conduct was

21   deliberately indifferent.

22   It appears that plaintiff had a difference of opinion with the treatment he received.

23   However, this cannot serve as the basis for an Eighth Amendment claim.  Jackson v. McIntosh,

24   90 F.3d 330, 332 (9th Cir. 1996).  In support of his opposition, plaintiff has relied on

25   unsupported conclusory allegations which cannot defeat summary judgment.  Leer v. Murphy,

26   844 F. 2d 628, 634 (9th Cir. 1988).

1    To the extent that plaintiff attempts to find defendant liable as the Chief Medical

2 Officer of MCSP, that claim must also fail.  Supervisory personnel are generally not liable under

3 § 1983 for the actions of their employees under a theory of respondeat superior and, therefore,

4 when a named defendant holds a supervisorial position, the causal link between him and the

5 claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858,

6 862 (9th Cir. 1979).  Vague and conclusory allegations concerning the involvement of official

7 personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d

8 266, 268 (9th Cir. 1982).  Plaintiff's allegations connecting defendant to the alleged conduct are

9 too tenuous and conclusory to find defendant liable.

10    Thus, summary judgment should be granted for defendant Williams as plaintiff

11 has failed to demonstrate any disputed issues of material fact.

12 VII.  Qualified Immunity

13    Because the court has found that the conduct alleged by plaintiff does not state a

14 constitutional deprivation, the court need not address defendant's argument for qualified

15 immunity.

16    Accordingly, IT IS HEREBY ORDERED that:

17    1.  Claims against non-moving defendants Moore and Frates will continue and in

18 due course the court will reset a schedule for litigation.

19    2.  Plaintiff's motion for a dispositive order (Dkt. No. 144) is denied.

20    IT IS HEREBY RECOMMENDED that the motion for summary judgment (Dkt.

21 No. 126), filed on April 14, 2009, be granted and defendant Williams dismissed.

22    These findings and recommendations are submitted to the United States District

23 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

24 one days after being served with these findings and recommendations, any party may file written

25 objections with the court and serve a copy on all parties.  Such a document should be captioned

26 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

16

objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 12, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

reed0060.sj